UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>118 WEBSTER AVENUE, CHELSEA, )<br>MASSACHUSETTS<br>Defendant. | **FILED EX PARTE AND UNDER SEAL**<br><br>Civil Action No.<br>MAGISTRATE JUDGE<br>**05 11497 NMG** |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by its attorney, Michael J.
Sullivan, United States Attorney for the District of Massachusetts,
in a civil action of forfeiture pursuant to Title 18, United States
Code, Section 981(a)(1)(c), alleges that:

1.   This Court has jurisdiction in this matter pursuant to 28
U.S.C. §§1345, 1355, and 1356.  Venue is appropriate pursuant to 28
U.S.C. §§1395.

2.   The in Rem Defendant Property is now, and during the
pendency of this action, will be within the jurisdiction of this
Court.

3.   The Defendant Property consists of the real property,
including all buildings and appurtenances, located at 118 Webster
Avenue, Chelsea, Massachusetts (the "Defendant Property" or "118
Webster Avenue").

4.   As detailed in the Affidavit of United States Department
of Homeland Security, U.S. Immigration and Customs Enforcement
Special Agent William S. Walker, attached as Exhibit A, and



incorporated herein by reference, the United States has probable cause to believe that the Defendant Property represents property, real or personal, which constitutes or is derived from, proceeds traceable to violations of 18 U.S.C. §2320, trafficking in counterfeit goods or services, and is therefore subject to forfeiture to the United States of American pursuant to 18 U.S.C §981(a)(1)(c).

WHEREFORE, the United States of America prays:

1.    That a Warrant and Monition, in the form submitted herewith, be issued to the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, commanding they to serve process upon the Defendant Property, and to give notice to all interested parties to appear and show cause why the forfeiture should not be decreed;

2.    That judgment of forfeiture be decreed against the Defendant Property;

3.    That thereafter, the Defendant Property be disposed of according to law; and

4.    For costs and all other relief to which the United States

may be entitled.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: JENNIFER H. ZACKS
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
Date:  7/14/05                (617) 748-3100

## VERIFICATION

I, William S. Walker, Special Agent, United States Department
of Homeland Security, U.S. Immigration and Customs Enforcement,
state that I have read the foregoing Verified Complaint for
Forfeiture In Rem, and that the contents thereof are true to the
best of my knowledge, information and belief.

William S. Walker, Special Agent
United States Department of
Homeland Security, U.S. Immigration
and Customs Enforcement

Date: 7/14/05

3

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                    Boston

Then personally appeared before me the above-named William S. Walker, Special Agent, United States Department of Homeland Security, U.S. Immigration and Customs Enforcement, who acknowledged the foregoing to be true to the best of his knowledge, information and belief, on behalf of the United States of America.

Subscribed to and sworn to before me this ____ day of _____, 2005.

_____
Notary Public
My commission expires: 2.2 07

NICOLE E. SWIEC
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 2, 2007

4

**EXHIBIT A**

## AFFIDAVIT OF WILLIAM S. WALKER

I, William S. Walker, being duly sworn, hereby depose and
state as follows:   **05  1 1 4 9 7 NMG**

1.    I am a Special Agent with the Department of Homeland
Security, U.S. Immigration and Customs Enforcement (ICE).   I am
assigned to the Office of the Special Agent in Charge, Boston,
Massachusetts, and I have been so employed since June 2002.   Prior
to that time, I was employed as a Customs Inspector from 1998 to
2002 in Philadelphia, Pennsylvania.   As an ICE Special Agent, I am
responsible for, among other things, investigating violations of
Federal Customs and Immigration laws, including financial fraud and
money laundering, and I have received specialized training in money
laundering, financial investigative techniques and federal asset
forfeiture   procedures,   and   trafficking   in   counterfeit   and
trademark-infringing items.

2.    As   a   result   of   my   personal   participation   in   this
investigation, through my conversations with other agents and
officers, and my analysis of reports prepared by other agents and
documentary evidence, I am familiar with all aspects of this
investigation.    I submit this affidavit based upon my personal
knowledge derived from my participation in this investigation and
upon information that I have received from a variety of other
sources, including other law enforcement officers and agents and

1

public records.

3.    This affidavit does not contain all the information relating to the investigation, but sets out that information necessary to show that there is probable cause to believe that the real property, including all buildings and appurtenances, located at 118 Webster Avenue, Chelsea, Massachusetts, (the "Defendant Property" or "118 Webster Avenue"), represents property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §2320, trafficking in counterfeit goods or services, and is therefore subject to forfeiture to the United States of America pursuant to  18 U.S.C. §981(a)(1)(C).

## The Investigation

4.    As detailed in the attached Affidavit of William S. Walker, previously submitted to this Court, in November 2004, an investigation began into the large-scale sale of counterfeit designer merchandise by Katherine Luong, Camphung Luong, and Minh Vu.   The investigation revealed that Katherine Luong, Camphung Luong, and Minh Vu stored large quantities of counterfeit designer merchandise in 13 storage units that they rented at an Extra Space Storage, a storage facility in Revere, Massachusetts.   A state search warrant for these storage units was obtained.   On January 27, 2005, when the search warrant was executed, law enforcement officers found more than 46,000 counterfeit items, bearing the brand names of manufacturers such as Louis Vuitton, Kate Spade,

2

Prada, Gucci, Chanel, Burberry, Coach, Fendi, Rolex, and Tiffany & Co. The value of these counterfeit items, based on their average retail price, is approximately $2.9 million. In addition, one of the storage units contained a worktable used to attach counterfeit labels, tools, jeweler's screwdrivers, x-acto knives, and generic labels that had been removed from bags and thousands of fake designer labels.

5. The investigation revealed that Katherine Luong, Camphung Luong, and Minh Vu had been involved in selling counterfeit items at numerous "purse parties" held for customers at private homes. E-mails sent by Minh Vu indicated that over 230 of these purse parties occurred between July 2003 and December 2004. In addition, the investigation revealed that Katherine Luong, Camphung Luong, and Minh Vu had been regularly selling counterfeit items at the Revere Flea Market since approximately 1999.

6. During 2003 and 2004, Katherine Luong and Minh Vu also regularly deposited large sums of money, far exceeding any money earned through their legitimate employment, into a number of bank accounts, including the following: Bank North account # 0020035870 (accountholder: Katherine Luong); Bank of America account #9481339742 (accountholder Katherine Luong); Bank North account #0020048522 (accountholders Minh Vu and Katherine Luong); Bank of America account #9487796135 (accountholder Minh Vu); Bank of America account #9470679450 (accountholder Minh Vu). On June 30,

3

2005, this Court issued seizure warrants for the contents of all of these accounts.

7.   As a result of the investigation, a state search warrant was issued for 118 Webster Avenue, Chelsea, Massachusetts, the residence of Katherine Luong, Camphung Luong, and Minh Vu.   On January 27, 2005, a search warrant was executed at 118 Webster Avenue by the Massachusetts Police, the Boston Police, and the Chelsea Police. Katherine Luong and Minh Vu, who were in the house located at 118 Webster Avenue at the time, were put under arrest.

8.   In the hallway of 118 Webster Avenue, the searching officers found several stacked cartons containing many pairs of counterfeit designer shoes (Gucci, Coach) and counterfeit designer handbags (Prada, Kate Spade, Louis Vuitton, and Coach). Also in the hallway were two shoeboxes containing counterfeit Tiffany jewelry individually packaged in clear plastic wrap.   The counterfeit Tiffany jewelry included bracelets, necklaces, rings, and earrings.   In the front bedroom, the officers found a red envelope addressed to Minh Vu, containing a counterfeit Tiffany bracelet being returned for credit, due to a problem with the clasp.

9.   In the middle bedroom of 118 Webster Avenue, the search revealed 27 uncashed personal checks from a variety of individuals in Massachusetts, totaling $21,586, written to Katherine Luong or without a payee listed. A safe was also found in this room.   The

4

police later obtained a separate search warrant for the safe. Inside the safe, they discovered a packet of money order receipts totaling $7,700 and payable to Carolynne Vu, Minh Vu's sister, who lives in Houston, Texas. The investigation into these funds is continuing, but, at this time, based on e-mails between Minh Vu and his sister, Carolynne Vu, it appears that Minh Vu was sending money to Carolynne Vu for the purpose of purchasing a business and real estate in Texas.

10.    Also found in the bedroom were records relating to the distribution and sale of counterfeit merchandise. These included invoices, receipts, sales books, counterfeit merchandise catalogs, authentic merchandise catalogs, printed e-mails, letters, correspondence, bank statements, including statements from a number of accounts, including the 5 accounts that are the subject of this seizure warrant, canceled checks, and credit card statements.

11.    Under the bed was a box containing 154 counterfeit designer watches and over 2000 counterfeit metal Gucci tags.  A backpack was found in the bedroom, containing three packages of money order receipts. One packet was for $25,000, one was for $25,500, and the third was for $19,000. Each packet was bound and clipped, with the notation "to CV." Based on the information collected during this investigation, and discussed in more detail below, I believe that "CV" is Carolynne Vu, Minh Vu's sister, who lives in Texas. Each packet of money order receipts was dated:

5

one was labeled September 2004, and the other two were labeled November 2004.

12. At the time of the search, Katherine Luong was carrying a blue leather pocketbook which contained $34,680 in U.S. currency, which was bound with money bands and separated into thousand dollar packets. In addition, in the middle bedroom at 118 Webster Avenue, the searching officers discovered a pink cookie tin containing $6,912.42 in U.S. currency.

## Bank of America account #9481339742

13. As noted above, Bank of America account #9481339742 (the "Bank of America Account"), was one of the accounts seized on June 30, 2005. The investigation as a whole and the large deposits being made into the Bank of America Account between August 2003 and January 2005 (the months for which the investigation has obtained and analyzed bank records), represent probable cause to believe that the proceeds of the illegal counterfeiting activities described above were being deposited into the Bank of America Account. As explained in more detail below, bank records reveal that in 2004, the mortgage payments for the Defendant Property were made with monies taken from the Bank of America Account.

14. The Bank of America Account was opened in August 2003 with a deposit of $2,295. Katherine Luong is the only authorized signatory on this account. Between August 2003 and January 2005, approximately $236,784 was deposited into the Bank of America

6

Account.  Specifically, the following deposits occurred into the Bank of America Account on the following dates.  I note that, as indicated below, on some of the statements the specific day of the deposit was either cut off or illegible.  For these deposits only the month and year of the deposit is listed:

| | |
|---|---|
| 8-29-03 | $2295 |
| 9-5-03 | $7110 |
| 9-9-03 | $680 |
| 10-?-03 | $2615 |
| 10-?-03 | $4788 |
| 10-?-03 | $7893 |
| 10-?-03 | $1236 |
| 10-?-03 | $7098 |
| 10-29-03 | $1631 |
| 10-31-03 | $3445 |
| 11-12-03 | $6560 |
| 11-18-03 | $4088 |
| 12-2-03 | $5535 |
| 12-8-03 | $4430 |
| 12-18-03 | $2375 |
| 12-23-03 | $1474 |
| 1-14-04 | $5458 |
| 1-29-04 | $4897 |
| 2-20-04 | $1312 |

| | |
|---|---|
| 2-27-04 | $2693 |
| 3-29-04 | $3502 |
| 4-6-04 | $4756 |
| 5-?-04 | $3065 |
| 5-?-04 | $2483 |
| 5-?-04 | $1570 |
| 5-?-04 | $3403 |
| 5-28-04 | $790 |
| 6-2-04 | $3826 |
| 6-3-04 | $1846 |
| 6-9-04 | $550 |
| 6-11-04 | $4380 |
| 6-21-04 | $2423 |
| 6-21-04 | $4851 |
| 6-21-04 | $4554 |
| 7-9-04 | $4675 |
| 7-14-04 | $8263 |
| 7-26-04 | $1460 |
| 7-30-04 | $2340 |
| 8-2-04 | $987 |
| 8-10-04 | $2641 |
| 8-13-04 | $5335 |
| 8-19-04 | $6149 |
| 8-20-04 | $2447 |

| | |
|---|---|
| 8–31–04 | $1450 |
| 9–1–04 | $997 |
| 9–2–04 | $455 |
| 9–7–04 | $808 |
| 9–21–04 | $6744 |
| 9–27–04 | $2325 |
| 9–29–04 | $2320 |
| 10–6–04 | $3377 |
| 10–6–04 | $595 |
| 10–13–04 | $5730 |
| 10–18–04 | $8721 |
| 11–2–04 | $3017 |
| 11–3–04 | $2422 |
| 11–12–04 | $7763 |
| 11–15–04 | $6732 |
| 11–18–04 | $3078 |
| 11–22–04 | $4771 |
| 12–2–04 | $6503 |
| 12–8–04 | $865 |
| 12–8–04 | $2394 |
| 12–8–04 | $1200 |
| 12–15–04 | $2093 |
| 12–17–04 | $1760 |
| 12–21–04 | $1480 |

```
12-?-04    $3670

1-?-05     $1605
```

## The Defendant Property

15.   In May 2001, Kimberly Luong, the sister of Katherine Luong, and Dat Van Huynh, her boyfriend, purportedly purchased the Defendant Property  for $103,000, with a mortgage of $97,850 from National City Mortgage Company.  Despite the fact that Kimberly Luong and Dat Van Huynh are listed as the owners of the Defendant Property, the two do not live in the Defendant Property, nor, during the period for which the investigation has obtained bank records, did Kimberly Luong or Dat Van Huynh pay the mortgage for the Defendant Property.   Instead, as outlined below, Katherine Luong, Camphung Luong, and Minh Vu lived in the Defendant Property and the mortgage payments for the Defendant Property were made from one of Katherine Luong's bank accounts.

16.   Kimberly Luong and Dat Van Huynh do not live in the Defendant Property, but, instead, live at 99 Newbury Avenue, Apt. #2, North Quincy, Massachusetts.  On her Massachusetts driver's license, which she obtained in 1996, Kimberly Luong lists the 99 Newbury Avenue apartment as her home address.   In addition, the names Kimberly Luong and Dat Van Huynh are currently listed on the mailbox at the 99 Newbury Avenue address.  In addition, in April 2005, Kimberly Luong applied to open a bank account at Eastern Bank in Boston and, in her application, provided the 99 Newbury Avenue

10

address as her home address.

17.   Katherine Luong, Camphung Luong, and Minh Vu have all stated the they actually live at Defendant Property.   When they were arrested, all three provided the address of 118 Webster Avenue as their home address.

18.   The mortgage statements for the Defendant Property are sent to Kim Luong and Dat Van Huynh, 118 Webster Ave., Chelsea, MA. However, as detailed below, all the mortgage payments for which records have been obtained appear to have been made from an account controlled solely by Katherine Luong.

19.   According to the mortgage records, the mortgage for the Defendant Property is an adjustable rate mortgage, with amounts due varying from $882.90 to 939.14 per month.   As described below, in certain months, additional amounts were paid on the mortgage and subtracted from the principal owed.   I have obtained the available records showing the mortgage payments on the Defendant Property for 2004, which are as follows:

March 2004:   A payment of $2,958.67 was made on the mortgage of the Defendant Property.   On March 26, 2004, check #113 for $2958.67 was written on Bank of America account number #9481339742, which is held in the name of Katherine Luong.

April 2004:   A payment of $2927.14 was made on the mortgage of the Defendant Property.   On April 5, 2004, bank check #9001 for $2,927.14   was   written   on   Bank   of   America   account   number

11

#9481339742, which is held in the name of Katherine Luong.

May 2004: A payment of $932.14 was made on the mortgage of the Defendant Property. On May 4, 2004, bank check #9002, in the amount of $932.14 was written on Bank of America account number #9481339742, which is held in the name of Katherine Luong.

June 2004: A payment of $1427.14 was made on the mortgage of the Defendant Property. On June 3, 2004, bank check #9003 in the amount of $1427.14 was written on Bank of America account number #9481339742, which is held in the name of Katherine Luong.

July 2004: A payment of $1882.90 was made on the mortgage of the Defendant Property. On July 2, 2004, bank check #9005 in the amount of $1882.90 was written on Bank of America account number #9481339742, which is held in the name of Katherine Luong.

August 2004: A payment of $1382.90 was made on the mortgage of the Defendant Property. On August 3, 2004, an electronic payment of $1382.90 was made to "NCMC Mortgage" from the Bank of America account #9481339742, which is held in the name of Katherine Luong.

September 2004: A payment of $1882.90 was made on the mortgage of the Defendant Property. On September 2, 2004, an electronic payment of $1882.90 was made to "NCMC Mortgage" from the Bank of America account #9481339742, which is held in the name of Katherine Luong.

October 2004: A payment of $1882.90 was made on the mortgage

12

of the Defendant Property.   On October 4, 2004, an electronic payment of $1882.90 was made to "NCMC Mortgage" from the Bank of America account #9481339742, which is held in the name of Katherine Luong.

November 2004:   A payment of $1882.90 was made on the mortgage of the Defendant Property.   On November 2, 2004, an electronic payment of $1882.90 was made to "NCMC Mortgage" from the Bank of America account #9481339742, which is held in the name of Katherine Luong.

December 6, 2004: A payment of $1887.90 was made on the mortgage of the Defendant Property.   On December 7, 2004, an electronic payment of $1887.90 was made to "NCMC Mortgage" from the Bank of America account $9481339742, which is held in the name of Katherine Luong.

13

## CONCLUSION

The foregoing information, and that information contained in the attached Affidavit of William S. Walker, demonstrates that there is probable cause to believe that the real property, including all buildings and appurtenances, located at 118 Webster Avenue, Chelsea, Massachusetts, represents property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §2320, trafficking in counterfeit goods or services, and is therefore subject to forfeiture to the United States of America pursuant to 18 U.S.C. §981(a)(1)(C).

Signed under the pains and penalties of perjury this 14ᵗ day of ___July___, 2005.

_____
William S. Walker, Special Agent
United States Department of
Homeland Security, U.S. Immigration
and Customs Enforcement

14

## AFFIDAVIT OF WILLIAM S. WALKER

I, William S. Walker, being duly sworn, hereby depose and state as follows:

1.    I am a Special Agent with the Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE).  I am assigned to the Office of the Special Agent in charge, Boston, Massachusetts, and I have been so employed since June 2002.  Prior to that time, I was employed as a customs inspector from 1998 to 2002 in Philadelphia, Pennsylvania.  As an ICE Special Agent, I am responsible for, among other things, investigating violations of federal Customs and Immigration laws, including financial fraud and money laundering, and I have received specialized training in money laundering, financial investigative techniques and federal asset forfeiture procedures and trafficking in counterfeit and trademark-infringing items.

2.    As a result of my personal participation in this investigation, through my conversations with other agents and officers, and my analysis of reports prepared by other agents and documentary evidence, I am familiar with all aspects of this investigation.  I submit this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information that I have received from a variety of other sources, including other law enforcement officers and agents and public records.

-1-

3.   This affidavit is made in support of applications for
seizure warrants for the following assets:

> a. the contents of Bank North account # 0020035870
>    (accountholder: Katherine Luong)
>
> b. the contents of Bank of America accounts #9481339742
>    (accountholder Katherine Luong)
>
> c. the contents of Bank North account #0020048522
>    (accountholders Minh Vu and Katherine Luong)
>
> d. the contents of Bank of America account #9487796135
>    (accountholder Minh Vu)
>
> e. the contents of Bank of America account #9470679450
>    (Minh Vu)
>
> f. A blue 2004 Chevrolet Express G3500 van,
>    VIN #1GAHG39U741185243, registered in the
>    name of Katherine Nguyet Luong (the Chevrolet
>    Express van)

4.   For each of these the above-listed bank accounts, there
is probable cause to believe the money in the bank accounts is
subject to seizure and forfeiture pursuant to 18 U.S.C. §981(b), 18
U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461 (incorporating 21 U.S.C.
§853), as any property real or personal which constitutes or is
derived from proceeds traceable to violations of 18 U.S.C. §2320,
trafficking in counterfeit goods or services.   In addition, an
order under 21 U.S.C. §853(e) may not be sufficient to assure the
availability of the property for forfeiture, because if the
property is returned to the custody of the accountholders, they
cannot reasonably be relied upon to abide by an order to maintain
the property so as to preserve it for forfeiture.

5. There is also probable cause to believe that the Chevrolet Express van is subject to seizure and forfeiture pursuant to 18 U.S.C. §981(b), 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461 (incorporating 21 U.S.C. §853), as any property real or personal which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §2320, trafficking in counterfeit goods or services. In addition, there is probable cause to believe that the Chevrolet Express van is subject to seizure and forfeiture pursuant to 18 U.S.C. §981(b) and 49 U.S.C. 80303 as a vehicle used to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband, with contraband defined to include any good bearing a counterfeit mark pursuant to 18 U.S.C. §2320.

6. In addition, an order under 21 U.S.C. §853(e) may not be sufficient to assure the availability of the property for forfeiture, because if the property is returned to the custody of the accountholders, they cannot reasonably be relied upon to abide by an order to maintain the property so preserve it for forfeiture.

**BACKGROUND**

7. On November 30, 2004, the Special Prosecutions Unit of Suffolk County District Attorney's Office was contacted by George Assad. Assad spoke with Detective Sharon Wong and told her that several Asians were selling counterfeit handbags, which they stored at Extra Space Storage, a storage warehouse located at 590 Revere

-3-

Beach Parkway, Revere, MA. Assad said that he had learned about these counterfeit handbags because he rented a storage locker in the same facility.

8. To obtain more information about counterfeit handbags, Detective Wong contacted Andrea Powers, who works for Power and Associates, the New England industry representative for a number of handbag designers. Powers said that she had also spoken with Assad. Powers also told Detective Wong that Assad had been charged with larceny by the Revere Police for breaking into a storage locker at Extra Space Storage and stealing handbags.

9. Powers later met with Assad, who showed her the wallets and handbags he had taken. Powers, an expert at identifying counterfeits, confirmed that the handbags and wallets that Assad had in his possession were counterfeit. Assad told Powers that the people who owned the counterfeit items rented several lockers at Extra Space Storage. Assad stated that the locker from which he took the handbags and wallets was unit #3108, which is located on the third floor. Assad also said that it was possible to see into the storage units without actually entering, because there is an opening in the top of each unit. In addition, Assad gave Powers the license plate numbers of motor vehicles in which he had seen the owners of the lockers driving to and from the storage facility. These were Massachusetts registrations 2774YC, 45CE38 and 8634YC.

10. On January 19, 2005, State Police Lieutenant Randy

-4-

Cipoletta and Suffolk County District Financial Analyst William Durette went to the Revere Police Department and spoke with Detective Michael Mason, who was handling the Assad larceny case. Detective Mason provided Cipoletta and Durette with a copy of the police report from November 28, 2004, relating to the theft of the items from the storage locker. In addition, Detective Mason showed videotapes taken from various surveillance cameras at Extra Space. The videos, which were date and time stamped, showed two men, one of whom was identified as Assad, leaving the third floor carrying large plastic bags, exiting the building, putting the bags into a car and driving off. In one of the videos, while Assad is waiting for the elevator, an Asian woman passes him and walks toward the storage area. Assad is then seen entering the elevator, and, as the elevator door closes, the Asian woman returns to the lobby area, apparently looking for someone.

11. According to the police report, on November 28, 2004, Katherine and Camphung Luong, who live at 118 Webster Avenue, Chelsea, MA, reported that approximately 75 handbags valued at $1500 were missing from their storage locker, unit 3108. Katherine Luong said that she stored the handbags at Extra Space and sold them at the Revere Flea Market. Katherine and Camphung Luong said that they had seen Assad in their storage unit, putting their handbags into plastic bags, and then leaving the building with the plastic bags. The Revere Police filed a summons application with

-5-

the Chelsea District Court on December 22, 2004, charging Assad with breaking and entering and larceny over $250. The larceny case is still pending in the state courts and is set for a jury trial on July 28, 2005.

12. Cipoletta and Durette met with the Assistant Manager of Extra Space, Heidi Cannatelli. After reviewing the facility's records, Cannatelli reported that Katherine Luong rents 13 units, 12 on the third floor and a drive-up unit at ground level. Cannatelli noted that these units were all rented in the name of Katherine Luong's boyfriend, Minh Vu. Cannatelli said that she frequently sees the people who rent the units carrying handbags and stated that she believed that the renters sell these handbags at the Revere Flea Market. Cannatelli confirmed that, because the rental units are not entirely enclosed, it is possible to see into the units from the common areas of the facility. Standing on a ladder placed in a common area on the third floor, Cipoletta could see inside unit 3108, the unit from which Assad had taken the merchandise, as well as unit 3109, another unit rented by Minh Vu. Cipoletta saw that the walls of both units were lined with storage shelves, which were stocked with large numbers of neatly-stacked handbags. From the hallway, Cipoletta would also see that the other units rented by Minh Vu were filled with cartons piled to the ceiling. Cipoletta forwarded photographs of the handbags in units 3108 and 3109 to Powers, who opined that the pictured Coach bags

were counterfeit.

13. Based on this information, state search warrants were obtained for the 13 storage units at Extra Space Storage rented in the name of Mihn Vu and for the residence of Katherine Luong, Camphung Luong and Mihn Vu, 118 Webster Avenue, Chelsea, MA. In addition, the Chelsea District Court issued arrest warrants for Minh Vu, Katherine Luong and Camphung Luong on state charges of possesion and transportation of counterfeit goods.

14. **The search of 118 Webster Avenue.** On January 27, 2005, a search warrant was executed at 118 Webster Avenue by the Massachusetts Police, the Boston Police and the Chelsea Police. Katherine Luong and Minh Vu, who were in the house at the time, were put under arrest. Katherine was carrying a blue leather pocketbook which contained $34,680 in U.S. currency, which was bound with money bands and separated into thousand dollar packets.

15. In the hallway of 118 Webster Avenue, the searching officers found several stacked cartons containing many pairs of counterfeit designer shoes (Gucci, Coach) and counterfeit designer handbags (Prada, Kate Spade, Louis Vuitton and Coach). Also in the hallway were two shoeboxes containing counterfeit Tiffany jewelry individually packaged in clear plastic wrap. The counterfeit Tiffany jewelry included bracelets, necklaces, rings and earrings. In the front bedroom, the officers found a red envelope addressed to Minh Vu, containing a counterfeit Tiffany bracelet being

-7-

returned for credit, due to a problem with the clasp.

16. The middle bedroom at 118 Webster Avenue contained several boxes filled with business and personal records. On a shelf was a pink cookie tin containing $6,912.42 in U.S. currency and 27 uncashed personal checks from a variety of individuals in Massachusetts, totaling $21,586 written to Katherine Luong or without a payee listed. A safe was also found in this room. The police later obtained a separate search warrant for the safe. Inside the safe, they discovered a packet of money order receipts totaling $7,700 and payable to Carolynne Vu, Minh Vu's sister, who lives in Houston Texas. The investigation into these funds is continuing, but, at this time, based on e-mails between Minh Vu and his sister, Carolynne Vu, it appears that Minh Vu was sending money to Carolynne Vu for the purpose of purchasing a business and real estate in Texas.

17. Also found in the bedroom were records relating to the distribution and sale of counterfeit merchandise. These included invoices, receipts, sales books, counterfeit merchandise catalogs, authentic merchandise catalogs, printed e-mails, letters, correspondence, bank statements, including statements from a number of accounts, including the 5 accounts that are the subject of this seizure warrant, canceled checks and credit card statements.

18. Under the bed, was a box containing 154 counterfeit designer watches and over 2000 counterfeit metal Gucci tags. A

-8-

backpack was found in the bedroom, containing three packages of money order receipts. One packet was for $25,000, one was for $25,500, and the third was for $19,000. Each packet was bound and clipped, with the notation "to CV." Based on the information collected during this investigation, and discussed in more detail below, I believe that "CV" is Carolynne Vu, Minh Vu's sister, who lives in Texas. Each packet of money order receipts was dated: one was labeled September 2004 and the other two were labeled November 2004.

19. **The 2004 Chevrolet Express G3500 van**. During the Janauary 27 search of 118 Webster, two vans and four cars and SUVs, all registered to either Katherine Luong, Camphung Luong or Minh Vu were parked in the driveway. One of the vans, a large 2004 dark blue Chevrolet Express van was filled with large plastic tubs, which were visible through the windows. Also visible on the engine cowling (the interior space covering the engine)were several counterfeit Kate Spade labels. These labels could be identified as counterfeit because Kate Spade does not manufacture this type of sticky-backed labels.

20. The van was seized by the searching officers. A state search warrant was obtained for the Chevrolet Express van and the warrant was executed on February 4, 2005. Inside were 24 plastic tupperware boxes containing counterfeit designer handbags, wallets, pouches and scarves; 8 large woven plastic bags containing

-9-

counterfeit designer handbags, wallets and pouches; 4 small plastic boxes containing 534 designer watches and one box containing tools and counterfeit designer tags.   The van also contained recent passes to the Revere Flea Market, as well as equipment relating to the sale of flea market items, such as tables, tents, tablecloths, tent anchors and ropes.

21.   Review of the records relating to the Chevrolet Express van revealed that the van was purchased on April 30, 2004 from Davidson Chevrolet in Malden, MA for a purchase price of $32,392. According to the lienholder, GMAC credit, the lien on the van was paid in full with three personal checks on October 21, 2004.

22.   **The search of the Extra Space Storage units**.   After conducting the search at 118 Webster Avenue, Cipoletta received a call from the State Police posted at Extra Space Storage.   They said that Camphung Luong had tried to enter the space.   When Cipoletta and the other officers arrived at the storage facility, Camphung Luong, after being advised of her Miranda rights, consented to a tape-recorded interview.   In this interview, Camphung Luong stated that she had been selling silver and silver-plated jewelry for several years.   She said that this jewelry is not made by a designer, but looks like Tiffany jewelry and she describes to customers as "Tiffany style."   She also stated that she helped her sister Katherine Luong and her boyfriend Minh Vu to sell items at the Revere Flea Market.   Camphung Luong stated that

-10-

Katherine Luong and Minh Vu sold handbags, gifts and watches and admitted that the bags had designer labels on them, such as Kate Spade, Gucci, Prada, Coach and Burberry. Camphung Luong stated that the blue van belonged to Katherine Luong and Minh Vu and that they used it to transport the merchandise to the Revere Flea Market. After giving this statement, Camphung Luong was taken into custody pursuant to the arrest warrant.

23. Following this interview, the officers conducted a search of the 13 storage units rented by Minh Vu at Extra Space Storage. Storage units 3108 and 3109 appeared to be set up as showrooms. These two units were lined with shelves on three sides, stocked with counterfeit handbags, scarves, wallets and jewelry. In addition, the entire floor, with the exception of a path around the perimeter, was filled with counterfeit handbags.

24. Ten of the 11 remaining units were stacked with merchandise from floor to ceiling. In addition to the counterfeit merchandise there were many bags and wallets that had no counterfeit labels attached to them. However, in unit 3104, the searching officers found a worktable used to attach counterfeit labels with tools, jeweler's screwdrivers, x-acto knives, generic labels that had been removed from bags and counterfeit designer labels. Also in the unit were thousands of fake designer labels carefully wrapped in plastic bags.

25. In total, the search warrants executed on the 13 storage

-11-

lockers resulted in the seizure of more than 46,000 counterfeit items, bearing the brand names of such manufacturers as Louis Vuitton, Kate Spade, Prada, Gucci, Chanel, Burberry, Coach, Fendi, Rolex and Tiffany & Co. Based on the average retail price of the counterfeit items, it is estimated that these counterfeit goods were worth aproximately $2.9 million.

26. Based on the information collected during the searches, the Suffolk County District Attorney's Office on January 31, 2005, sought and obtained an ex parte order, freezing the following accounts:

a. Bank of America Checking account # 9487796135 (Minh Vu)

b. Bank of America Money Market # 9470679450 (Minh Vu)

c. Bank of America Account # 9481339742 (Katherine Luong)

d. Boston Federal Savings Bank (formally Broadway Savings Chelsea, and now Bank North) Account # 0020048522. (Minh Vu and Katherine Luong)

e. Broadway National Bank Account # 0020054816 (Katherine Luong DBA Y.M. Trading)

f. Bank North Account # 0020035870 (Katherine Luong)

g. Citizens Bank Checking account # 1134647732 (Katherine Luong)

h. Citizens Bank Savings account # 1162494666 (Katherine Luong)

i. Washington Mutual Savings Account # 3086306161 (Minh Vu).

These accounts have remained frozen since January 31, 2005. However, the accounts for which a seizure order is not requested are either closed or have no funds on deposit.

27. The paperwork, including the bank statements, cancelled checks and credit card statements, taken from 118 Webster Avenue was analyzed. In addition, additional records were obtained through subpoenas. These records revealed information discussed in the following paragraphs.

28. From the articles of incorporation the investigation has learned that in 1999 Katherine Luong started a business called Y.M. Trading, involved in retail business. According to a resume seized at 118 Webster Avenue, this company appears to have been Katherine Luong's sole source of income from 1999-2001 and no employers are listed after that time. The investigation has learned that Katherine Luong rented a number of storage units from a storage company called Storage USA, located in Everett, MA. When interviewed by the police on March 7, 2005, Joe Chiarenza, an acquaintance and customer of Katherine Luong's, stated that he had been to the storage units at Storage USA, as well as those located at Extra Space Storage, on many occasions and had purchased counterfeit merchandise. Chiarenza stated that he had seen many other purchasers of counterfeit merchandise at both storage unit locations.

29. In addition, at 118 Webster Avenue, receipts were found

-13-

for quantities of merchandise shipped, shipping orders, mailing supplies, boxes, labels and lists of items to be shipped. Moreover, during the search, boxes were found containing damaged counterfeit merchandise, which had been returned to Katherine Luong and Minh Vu from purchasers in Georgia, California and Puerto Rico. Notes with these items explained who was returning the counterfeit items and why.

30.  Based on the records and other evidence, including emails from Minh Vu as described below, I believe that, in addition to selling counterfeit goods at the Revere Flea Market, Katherine Luong and Minh Vu were conducting "purse parties" at which they sold counterfeit merchandise. A purse party is a party of at least 15 people held at people's homes at which people examine and buy merchandise.  As discussed in more detail below, emails sent by Minh Vu indicate that there were approximately 230 purse parties conducted between July 2003 and December 2004.   Specifically, between December 2003 and December 2004, purse parties took place on the following dates:

**December 2003**: 1, 2, 6, 7, 8, 9, 11, 12, 13, 15, 16, 18, 19, 20

**January 2004**: 10, 14, 15, 22, 30, 31

**February 2004**: 4, 6, 7, 8, 10, 13, 20, 24, 26

**March 2004**: 3, 4 (two parties), 5, 10, 14, 19, 20, 24, 25, 28

**April 2004**: 1, 2, 3, 5, 6, 7, 8, 9, 10, 13, 15, 20, 21, 22, 24, 25, 27, 28, 29

**May 2004**: 1, 2, 4, 5

**June 2004**: 1, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 23, 24, 25, 26, 27

**July 2004**: 1, 2, 6, 8, 9, 11, 12, 16, 18, 25

**August 2004**: 4, 6, 9, 10, 12, 18, 20, 27

**September 2004**: 9, 15, 17, 18, 20, 22, 23, 24, 25, 26, 27, 28, 30

**October 2004**: 1, 2, 3, 5, 7, 8, 9, 21, 27, 28

**November 2004**: 3, 4, 6, 7, 8, 9, 10, 12, 14, 15, 17, 18, 20, 21, 22, 23, 25, 26, 27, 28, 30

**December 2004**: 1, 2 (3 parties), 3 (3 parties), 4, 5, 6 (two parties), 7 (two parties), 8, 9, 10 (two parties), 11, 12, 13, 14, 15, 17, 18.

31. In addition, although the Revere Flea Market does not keep a daily log of vendors, the manager of the Revere Flea Market stated that to the best of her recollection, Katherine Luong, Camphung Luong and/or Minh Vu were present and selling merchandise every Saturday and Sunday that the flea market has been open since approximately 1999. The Revere Flea Market is open for operation during April though December on weekends and holiday Mondays.

32. Other seized records indicated that Minh Vu was employed from approximately March 2000 to November 2004 at the Boston law firm of Holland and Knight as a hours billable clerk. Tax records indicate that Minh Vu earned approximately $41,182 in 2003 and $39,231 in 2004. A subpoena was sent to Holland and Knight, which

produced approximately 600 emails sent by Minh Vu. In November 2004, Minh Vu resigned from Holland and Knight. The reason stated by Minh Vu in his emails to co-workers is that he cannot continue to work at Holland and Knight and to run his retail business at the same time. In addition, in his emails, Minh Vu stated that he was investing in property in Texas, which he intended to quickly turn over to make a profit.

33. A large number of the emails sent by Minh Vu while at Holland and Knight, during approximately a year and a half from approximately June 2003 to the end of November 2004 are communications between Minh Vu and women making arrangements to host purse parties. In these emails, the women state how many people they expect, the date, location, and the types of items they want brought to the party. Minh Vu would then forward this information by email to Camphung Luong and/or Katherine Luong. The subject line of these emails would include the host's name and the date and time of the purse party. The body of the email would include the contact information for the host of the purse party and directions to the host's home and the number of people expected and the time of the party. A typical email included information about the merchandise requested, such as "Bring: usual variety, white LV [Louis Vuitton] speedy, belts, sunglasses, et al." On a weekly basis, usually on Mondays, Minh Vu sent Camphung Luong an email containing a schedule of the parties she would be conducting. A

-16-

typical email read as follows: "Good news: very light schedule this week and next week. You have a party today, Monday and also Sunday 7/25. For next week, You do not have another party until Saturday 7/31. Enjoy your 'summer break."

34. A study of the access log of the Extra Space storage facility where counterfeit goods were stored reveals that Minh Vu and/or Katherine and Camphung Luong visited the storage facility every day in November 2004 (except Thanksgiving Day) and every day in December 2004 (except Christmas Day and December 26).

35. In addition, during this same time period, Minh Vu was sending large sums of money to Texas. Minh Vu was communicating by email with his sister, Carolynne Vu. In some of these emails, Carolynne Vu stated that she had received and deposited all the money orders that Minh Vu had sent her. In addition, Carolynne Vu stated that she wanted to buy a dry cleaning business and asks Minh Vu to send her $100,000 in addition to the $50,000 he had already sent her. Records received from Washington Mutual Bank in Houston, Texas and the Energy Capitol Credit Union show that Carolynne Vu had accounts at these banks and deposited the money orders into her accounts at these two banks. In addition, an analysis of these accounts show large deposits, including large deposits, each individually under $10,000 made on consecutive days at different branch locations, apparently to avoid reporting requirements.

36. A mortgage application and other mortgage documents found

-17-

in the search of 118 Webster Avenue, showed that, on May 28, 2004, Minh Vu bought a home at 6506 Felicia Oaks Trail, Houston. The purchase price was $266,185.72, of which Minh Vu paid $63,007,31 in cash. Credit card statements show that over $20,000 was spent on furnishings and custom construction for the 6506 Felicia Oaks Trail property. In addition, mortgage records show that Mihn Vu was making significant pre-payments on the Felicia Oaks Trail property, as well as on the 118 Webster Avenue property.

37. **The subject accounts.** During November and December 2004, significant deposits were made into each of the accounts for which the seizure warrant is sought. Specifically, $13,760 was deposited into Bank North account #0020035870; $21,326 was deposited into Bank of America account #9481339742; $10,075 was deposited into Bank North account #0020048522; $23,266 to Bank of America account #9487796135 (Vu). (No deposits were made in November and December 2004 to #9470679450 (Vu)). The total deposits to these accounts for November and December 2004 equal approximately $68,427. A more detailed analysis of the deposits into the accounts, extending back over a longer period, is outlined below, and indicates that during the same time period that Katherine Luong, Camphung Luong and Minh Vu were conducting numerous purse parties and selling items at the Revere Flea Market, and storing and retrieving large amounts of counterfeit items in storage lockers, large deposits were being made into bank accounts controlled by them. Moreover, their

-18-

legitimate employment does not account for these large sums of money.

38. **Bank North account #0020035870**, The current balance of this account is $5,920.  This account was opened in May 2000 at Broadway National Bank in Chelsea (later incorporated by Bank North).  Katherine Luong is the sole signatory on this account.  A regular deposit of a Social Security check of $720/month was made into this account.  Aside from this Social Security deposit, the deposits into this account from January 2003 to December 2004 total $55,620.  These deposits are as follows:

| | |
|---|---|
| 12-22-04 | $3260 |
| 12-8-04 | $7000 |
| 11-22-04 | $3500 |
| 7-26-04 | $2000 |
| 7-14-04 | $925 |
| 6-10-04 | $2320 |
| 5-14-04 | $2994 |
| 4-26-04 | $1391 |
| 4-20-04 | $2483 |
| 12-2-03 | $2986 |
| 11-17-03 | $2904 |
| 10-27-03 | $2550 |
| 10-1-03 | $4000 |
| 10-1-03 | $4860 |

8-11-03    $2617

8-7-03    $3473

7-21-03    $2000

3-10-03    $4357.

39.  **Bank of America account #9481339742.**  The current balance
in this account is $16,673.  The account was opened in August 2003
with a deposit of $2,295.  Katherine Luong is the only authorized
signatory on this account.  Between August 2003 and January 2005
approximately  $236,784  was  deposited  into  the  account.
Specifically, the following deposits occurred into the account on
the following dates.  I note that, as indicated below, on some of
the statements the specific day of the deposit was either cut off
or illegible.  For these deposits only the month and year of the
deposit is listed:

   8-29-03    $2295

   9-5-03    $7110

   9-9-03    $680

   10-?-03    $2615

   10-?-03    $4788

   10-?-03    $7893

   10-?-03    $1236

   10-?-03    $7098

   10-29-03    $1631

   10-31-03    $3445

| | |
|---|---|
| 11-12-03 | $6560 |
| 11-18-03 | $4088 |
| 12-2-03 | $5535 |
| 12-8-03 | $4430 |
| 12-18-03 | $2375 |
| 12-23-03 | $1474 |
| 1-14-04 | $5458 |
| 1-29-04 | $4897 |
| 2-20-04 | $1312 |
| 2-27-04 | $2693 |
| 3-29-04 | $3502 |
| 4-6-04 | $4756 |
| 5-?-04 | $3065 |
| 5-?-04 | $2483 |
| 5-?-04 | $1570 |
| 5-?-04 | $3403 |
| 5-28-04 | $790 |
| 6-2-04 | $3826 |
| 6-3-04 | $1846 |
| 6-9-04 | $550 |
| 6-11-04 | $4380 |
| 6-21-04 | $2423 |
| 6-21-04 | $4851 |
| 6-21-04 | $4554 |

| Date | Amount |
|------|--------|
| 7-9-04 | $4675 |
| 7-14-04 | $8263 |
| 7-26-04 | $1460 |
| 7-30-04 | $2340 |
| 8-2-04 | $987 |
| 8-10-04 | $2641 |
| 8-13-04 | $5335 |
| 8-19-04 | $6149 |
| 8-20-04 | $2447 |
| 8-31-04 | $1450 |
| 9-1-04 | $997 |
| 9-2-04 | $455 |
| 9-7-04 | $808 |
| 9-21-04 | $6744 |
| 9-27-04 | $2325 |
| 9-29-04 | $2320 |
| 10-6-04 | $3377 |
| 10-6-04 | $595 |
| 10-13-04 | $5730 |
| 10-18-04 | $8721 |
| 11-2-04 | $3017 |
| 11-3-04 | $2422 |
| 11-12-04 | $7763 |
| 11-15-04 | $6732 |

| 11-18-04 | $3078 |
| 11-22-04 | $4771 |
| 12-2-04 | $6503 |
| 12-8-04 | $865 |
| 12-8-04 | $2394 |
| 12-8-04 | $1200 |
| 12-15-04 | $2093 |
| 12-17-04 | $1760 |
| 12-21-04 | $1480 |
| 12-?-04 | $3670 |
| 1-?-05 | $1605 |

40.   **Bank North account #0020048522**, The current balance in this account is $1,260.  This account is jointly held by Minh Vu and Katherine Luong and was opened May 15, 1998.  Beginning in January 2003, there is a biweekly direct deposit into this account from Minh Vu's employer, Holland and Knight.   These bi-weekly deposits varied in amount, but were typically about $1,050 to $1150. This approximately corresponds to Minh Vu's tax information, which  reflects that he earned a salary of approximately $41,182 in 2003 and $39,231 in 2004.

41.   However, in addition to the direct deposits from Holland and Knight, the following deposits into the account were found, totaling approximately $121,460:

| 7-1-02 | $1260 |

| | |
|---|---|
| 7-9-02 | $1146 |
| 10-1-02 | $500 |
| 10-31-02 | $695 |
| 10-31-02 | $1100 |
| 11-11-02 | $1140 |
| 11-15-02 | $2250 |
| 11-16-02 | $2505 |
| 11-27-02 | $600 |
| 11-30-02 | $1100 |
| 12-4-02 | $648 |
| 12-11-02 | $1655 |
| 12-13-02 | $2485 |
| 12-13-02 | $940 |
| 12-17-02 | $4435 |
| 12-17-02 | $449 |
| 1-3-03 | $3368 |
| 1-6-03 | $1318 |
| 1-17-03 | $600 |
| 1-21-03 | $1292 |
| 1-22-03 | $4105 |
| 1-30-03 | $1295 |
| 7-23-03 | $1239 |
| 8-7-03 | $465 |
| 9-11-03 | $3656 |

| | |
|---|---|
| 9-17-03 | $5822 |
| 9-30-03 | $4083 |
| 10-7-03 | $9257 |
| 10-17-03 | $1084 |
| 10-17-03 | $1106 |
| 10-29-03 | $2040 |
| 11-18-03 | $10,137 |
| 11-20-03 | $1250 |
| 12-3-03 | $1125 |
| 12-15-03 | $1113 |
| 12-19-03 | $9010 |
| 12-19-03 | $4145 |
| 1-29-04 | $3050 |
| 4-2-04 | $1615 |
| 5-20-04 | $3034 |
| 5-26-04 | $992 |
| 7-14-04 | $6000 |
| 7-20-04 | $1470 |
| 7-27-04 | $931 |
| 8-2-04 | $5000 |
| 8-19-04 | $1100 |
| 12-8-04 | $4500 |
| 12-23-04 | $3350 |

42. **Bank of America account #9470679450 (money market)**

This account was opened in September 2003 by Minh Vu and has a current balance of $10,111. The record of deposits into this account shows a series of ATMs in Boston- totaling $49,340:

| | |
|---|---|
| 9-19-03 | $1157 |
| 9-22-03 | $2480 |
| 9-30-03 | $2880 (Balance at end of month $3687) |
| 10-7-03 | $4921 |
| 10-8-03 | $2334 |
| 10-15-03 | $2585 |
| 10-16-03 | $4959 |
| 10-29-03 | $2807 (Balance at end of month $16831) |
| 11-12-03 | $3075 |
| 11-18-03 | $1695 (Balance at end of month $24759) |
| 12-2-03 | $2875 |
| 12-8-03 | $1252 |
| 12-17-03 | $175 |
| 12-22-03 | $795 (Balance at end of month $29684) |
| 1-14-04 | $1870 |
| 1-29-04 | $2083 (Balance at end of month $31470) |
| 2-6-04 | $3293 |
| 2-10-04 | $2388 |
| 2-24-04 | $1867 (ending monthly balance:  $41241) |
| 3-11-04 | $235 |

3-19-04    $774

4-14-04    $840

8-9-04    $2000

43.   In May 2004, the statement for this account was combined into single statements with Minh Vu's Bank of America account #9487796135 (checking acount), showing transfers between the two accounts.

44.   **Bank of America account #9487796135 (checking)**.   This account was opened by Minh Vu on May 13, 2004 with a transfer of $1000 from the above-listed money market account.  It currently has a balance of $3,840.  The statements show deposits into account #9487796135 beginning in May 2004, with deposits totaling $26,869

5-13-04    $1000 (transfer from above account)

5-26-04    $2000

6-23-04    $337

6-25-04    $284 (ending monthly balances:  checking:    $2642

money market $10156

7-14-04    $5000

8-13-04    $2200

9-7-04    $1700

9-21-04    $240

9-29-04    $3600

10-13-04    $2370

10-26-04    $1700

-27-

10-26-04    $4128

11-8-04    $2310

#### CONCLUSION

45.   Based on the above facts and circumstances, I believe that there is probable cause to believe that the money in the above-listed bank accounts is subject to seizure and forfeiture pursuant to 18 U.S.C. §981(b), 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461 (incorporating 21 U.S.C. §853), as any property real or personal which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §2320, trafficking in counterfeit goods or services.   There is also probable cause to believe that the Chevrolet Express van is subject to seizure and forfeiture pursuant to 18 U.S.C. §981(b), 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461 (incorporating 21 U.S.C. §853), as any property real or personal which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §2320, trafficking in counterfeit goods or services.   In addition, there is probable cause to believe that the Chevrolet Express van is subject to seizure and forfeiture pursuant to 18 U.S.C. §981(b) and 49 U.S.C. 80303 as a vehicle used to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband, with contraband defined to include any good bearing a counterfeit mark pursuant to 18 U.S.C. §2320. In addition, an order under 21 U.S.C. §853(e) may not be sufficient to assure the availability of the

-28-

property for forfeiture, because if the property is returned to the custody of the accountholders, they cannot reasonably be relied upon to abide by an order to maintain the property so as to preserve it for forfeiture.

_____

William S. Walker,
Special Agent, ICE

Subscribed and sworn to before me this $\underline{30^{th}}$ day of $\underline{June}$ , 2005.

_____

LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE